UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
TRUSTEES OF THE PAVERS AND ROAD :
BUILDERS DISTRICT COUNCIL WELFARE, :
PENSION, AND ANNUITY FUNDS and THE :
TRUSTEES OF THE LOCAL 1010 :
APPRENTICESHIP, SKILL IMPROVEMENT, :
AND TRAINING FUND, :
                                   :

                      Plaintiffs, :
                                   :
          -against- :
                                   :
RICI CORP., :
                                   :
                      Defendant. :
------------------------------------------------------------------ x

|  |
| --- |
| REPORT AND RECOMMENDATION |
| 24-CV-6632 (RPK)(MMH) |

**MARCIA M. HENRY**, United States Magistrate Judge:

      Plaintiffs Trustees of the Pavers and Road Builders District Council Welfare, Pension, and Annuity Funds and the Trustees of the Local 1010 Apprenticeship, Skill Improvement, and Training Fund (collectively, "the Funds") sued Defendant Rici Corp., alleging violations of the Employee Retirement Income Security Act of 1974 as amended, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), and the Labor Management Relations Act, 29 U.S.C. §§ 141 *et seq.* ("LMRA"). (*See generally* Compl., ECF No. 1.)[1]  Before the Court is Plaintiffs' motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rule 55.2(b). (*See generally* Mot., ECF No. 13.)[2]  The Honorable Rachel Kovner referred the

---

[1] All citations to documents filed on ECF are to the ECF document number (*i.e.*, "ECF No. ___") and pagination "___ of ___" in the ECF header unless otherwise noted.

[2] The motion papers include the Notice of Motion (Mot., ECF No. 13); the declaration of Keith Loscalzo (Loscalzo Decl., ECF No. 14) and its five supporting exhibits (Loscalzo Decl. Exs. A–E, ECF Nos. 14-1 through 14-5); the declaration of Joseph Montelle (Montelle Decl., ECF No. 15) and its seven supporting exhibits (Montelle Decl. Exs. F–L, ECF Nos. 15-1 through 15-7); the declaration of Jennifer Ebitz (Ebitz Decl., ECF No. 16) and its one exhibit (Ebitz Decl. Ex. M, ECF No. 16-1); the declaration of Adrianna R. Grancio (Grancio Decl., ECF No. 17) and its 10

motion for report and recommendation.  For the reasons set forth below, the Court respectfully recommends that the motion should be **granted in part** and that Plaintiffs should be awarded damages as set forth herein.

## I.    BACKGROUND

### A.    Factual Allegations

The following facts are taken from the Complaint, whose well-pleaded allegations are assumed to be true, and the uncontroverted documentary evidence submitted in support of the motion.  *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

The Funds are employee benefit plans within the meaning of ERISA and are administered from an office in Whitestone, New York.  (Compl., ECF No. 1 ¶ 4.)  Plaintiffs are employer and employee trustees of multiemployer labor-management trust funds organized and operated within the meaning of the LMRA.  (*Id.*)  Defendant is a foreign business corporation organized under the laws of New Jersey with a principal place of business at 46 Hobart Place, Garfield, New Jersey, authorized to conduct business within New York, and engaged in the construction business.  (*Id.* ¶ 5.)  Defendant is an employer engaged in an industry affecting commerce within the meaning of ERISA and the LMRA.  (*Id.*)

At all relevant times, Defendant was bound by a Project Labor Agreement ("PLA") regarding work performed on behalf of the New York City School Construction Authority.  (*See* Loscalzo Decl. Exs. A–B (Ltr. & PLA), ECF Nos. 14-1 to 14-2.)  Through the PLA,

exhibits (including a proposed default judgment) (Grancio Decl. Exs. N–W, ECF Nos. 17-1 through 17-10); a memorandum of law (Pls. Mem., ECF No. 18); a certificate of service for the default motion papers (ECF No. 19), and a supplemental letter with exhibits (Pls. Suppl. Ltr., ECF No. 27).

Defendant was bound to two collective bargaining agreements (the "CBAs") with the Highway, Road and Street Construction Laborers Local Union 1010 (the "Union") for the periods between July 1, 2021 through June 30, 2024 and from July 1, 2024 through June 30, 2027.  (*See* Compl., ECF No. 1 ¶ 10; *see also* Loscalzo Decl. Exs. C–D (CBAs), ECF Nos. 14-3 to 14-4.)  The CBAs incorporate the Trust Agreements which permit Plaintiffs to establish rules for administration of the CBAs.  (*See* Compl., ECF No. 1 ¶¶ 11–12; Loscalzo Decl. Ex. C (CBA 1), ECF No. 14-3 at 24; *id.* Ex. D (CBA 2), ECF No. 14-4 at 25; *see generally* Montelle Decl. Exs. F–H, ECF Nos. 15-1 through 15-3.)

Under the CBAs, Defendant must remit specified benefit contributions to the Funds and related entities for all work performed by its employees within the trade and geographical jurisdiction of the Union ("Covered Work") and specified dues check-offs and other contributions to the Union ("Union Assessments").  (Compl., ECF No. 1 ¶¶ 14–15; *see* Loscalzo Decl. Ex. C (CBA 1), ECF No. 14-3 at 23–27; *id.* Ex. D (CBA 2), ECF No. 14-4 at 25–27.)  Defendant's contributions and a report of the number of hours of Covered Work performed are due to the Funds on the 35th day following the close of the month in which the hours were worked.  (Compl., ECF No. 1 ¶¶ 16–17, 23; Loscalzo Decl. Ex. C (CBA 1), ECF No. 14-3 at 24; *id.* Ex. D (CBA 2), ECF No. 14-4 at 25–26; Montelle Decl. Ex. I (Collection Policy), ECF No. 15-4 at 3.)

Pursuant to the CBAs, Plaintiffs established a Policy for Collection of Delinquent Fringe Benefits Contributions (the "Collection Policy").  (Compl., ECF No. 1 ¶ 13; *see generally* Montelle Decl. Ex. I (Collection Policy), ECF No. 15-4.)  Under the Collection Policy, if an employer is delinquent in making contributions and did not submit the required remittance reports, the Funds are entitled to estimate the amount of delinquent contributions

for each month.  (Compl., ECF No. 1 ¶ 18.)  Pursuant to the CBAs and Collection Policy, if any employer fails to pay contributions when due, the employer is liable for interest on the unpaid contributions at the annual rate of ten percent, liquidated damages in the amount of ten percent of the unpaid contributions, and the Funds' attorneys' fees if necessary to collect delinquent benefit contributions.  (*Id*. ¶¶ 19–20; Loscalzo Decl. Ex. C (CBA 1), ECF No. 14-3 at 26; *id*. Ex. D (CBA 2), ECF No. 14-4 at 27; Montelle Decl. Ex. I (Collection Policy), ECF No. 15-4 at 3.)

Plaintiffs allege that Defendant failed to submit reports detailing the number of hours of Covered Work performed by its employees for the period from November 2023 through July 2024, and accordingly, owes the Funds contributions and Union Assessments for this same period.  (Compl., ECF No. 1. ¶ 24.)  Plaintiffs allege that Defendant is liable for unpaid contributions and union assessments; interest on the unpaid contributions; liquidated damages; and attorneys' fees and costs.  (*Id*. ¶ 25.)

## B.    Procedural History

Plaintiffs initiated this action on September 20, 2024 and, on September 24, 2024, served the Summons and Complaint on Defendant's general agent at Defendant's principal place of business.  (Compl., ECF No. 1; Aff. of Service, ECF No. 6.)  After Defendant failed to appear or otherwise respond to the Complaint, the Clerk of Court entered default against Defendant on November 19, 2024.  (Entry of Default, ECF No. 12.)  On December 20, 2024, Plaintiffs moved for default judgment and damages and served Defendant by first class and electronic mail with the motion for default judgment at Defendant's business addresses.  (*See generally* Mot., ECF No. 13; Cert. of Service, ECF No. 19.)  Judge Kovner referred the motion for report and recommendation.  (Dec. 20, 2024 Order Referring Mot.)  The Court held a

4

motion hearing on May 22, 2025; Defendant did not appear, despite service of the Court's scheduling order on all parties.  (May 22, 2025 Min. Entry; Hr'g Tr., ECF No. 26.)  Plaintiffs submitted post-hearing supplemental briefing at the Court's request.  (Pls. Suppl. Ltr., ECF No. 27.)  To date, Defendant has not appeared or responded to the motion.

## II.    DISCUSSION

### A.    Legal Standards for Default Judgment

Rule 55 of the Federal Rules of Civil Procedure employs a two-step process for a party to obtain a default judgment.  Fed. R. Civ. P. 55(a)–(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y Mar. 9, 2021).  *First*, when a party uses an affidavit or other proof to show that a party has "failed to plead or otherwise defend" against an action, the clerk shall enter a default.  Fed. R. Civ. P. 55(a).  If a claim is for "a sum certain or a sum that can be made certain by computation," the clerk can enter judgment.  Fed. R. Civ. P. 55(b)(1).  *Second*, and "[i]n all other cases, the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021).  To "enter or effectuate judgment" the Court is empowered to "(A) conduct an accounting;  (B)  determine the amount of damages;  (C) establish the truth of any allegation by evidence; or (D)  investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default motion is "left to the sound discretion of a district court."  *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up).  The Court must draw all reasonable inferences in favor of the movant.  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  However, "'[a] default . . . only establishes a

defendant's liability if those allegations are sufficient to state a cause of action against the defendant.'" *Double Green Produce, Inc. v. F. Supermarket Inc*., 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (quoting *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013)).

### B.    Jurisdiction & Venue

#### 1.    Subject Matter Jurisdiction

The Court has original jurisdiction over Plaintiffs' claims pursuant to ERISA, 29 U.S.C. §§ 1132(e)(1), 1132(f), and 1451(c); and pursuant to the LMRA, 29 U.S.C. § 185(c).  *See* 28 U.S.C. § 1331.

#### 2.    Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).  The three requirements for personal jurisdiction are: (1) the plaintiff's service of process upon the defendants must have been procedurally proper; (2) there must be a statutory basis for personal jurisdiction that renders such service of process effective; and (3) the exercise of personal jurisdiction must comport with constitutional due process principles. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012) (subsequent history omitted).

The Court has personal jurisdiction over Defendant.  Plaintiffs personally served the Summons and Complaint to Defendant's general agent authorized to accept service on Defendant's behalf at Defendant's principal place of business.  (Pls. Mem., ECF No. 18 at 9–

10; Aff. of Service, ECF No. 6.)  This method of service on a corporation comports with federal and state service rules.  Fed. R. Civ. P. 4(h)(1)(A)–(B); N.J. Ct. R. 4:4-4(a)(6).

Further, Plaintiffs invoke the proper statutory bases for personal jurisdiction.  (Compl., ECF No. 1 ¶ 2 (citing 29 U.S.C. §§ 1132(e)(1), (f) & 1451(d).)  Section 502(e)(2) of ERISA,[3] the basis for the Court's jurisdiction, "has been interpreted as a 'nationwide service of process' provision that confers personal jurisdiction over a defendant so long as they have minimum contacts in the United States."  *Trs. of Loc. 7 Tile Indus. Welfare Fund v. Tuckahoe Tile, Inc.*, No. 15-CV-5535 (RJD)(CLP), 2016 WL 8711716, at *3 (E.D.N.Y. Sept. 2, 2016), *adopted sub nom. by Trs. of the Loc. 7 Tile Indus. Welfare Fund v. Tuckahoe Tile, Inc.*, No. 15-CV-5535 (RJD)(CLP), 2016 WL 8711437 (E.D.N.Y. Sept. 30, 2016); *see also* Fed. R. Civ. P. 4(k)(1)(C) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a federal statute."); *see also Trs. of Loc. 7 Tile Indus. Welfare Fund v. Caesar Max Const. Inc.*, No. 18-CV-1339 (FB)(LB), 2019 WL 1130727, at *5 (E.D.N.Y. Feb. 11, 2019), *adopted by* 2019 WL 1129430 (E.D.N.Y. Mar. 12, 2019).   Here, "it is clear that defendant [Rici Corp.] has minimum contacts with the United States because it is incorporated and has its principal place of business in New Jersey." *Tuckahoe Tile, Inc.*,

---

[3] Section 502(e)(2) states, in relevant part, that ERISA actions brought in federal court "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e); *see also id.* § 1451(d) (ERISA Section 515(d)) ("An action under this section may be brought in the district where the plan is administered or where a defendant resides or does business, and process may be served in any district where a defendant resides, does business, or may be found.")  Similarly, Section 301 of the LMRA states, in relevant part, that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . .  may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." *Id.* § 185(a).

2016 WL 8711716, at *3.  Moreover, Plaintiffs properly rely on Section 502(e) because they allege that Funds are administered in New York.  (Compl., ECF No. 1 ¶ 4.)  "Since Plaintiffs are proceeding under a statute that provides for nationwide service of process, the Court need not consider whether [Rici Corp.] has minimum contacts with New York.  If it were necessary to conduct such an analysis, the Court would consider whether [Rici Corp.] 'purposefully established minimum contacts within the forum State,' and exercising jurisdiction 'comport[s] with fair play and substantial justice.'"  *Caesar Max Const. Inc.*, 2019 WL 1130727, at *5 (cleaned up) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).  That test is easily met where, as here, Defendant entered into the CBAs which cover work Defendant performed in New York and remitted contributions to the Funds located in New York.  (*See, e.g.*, Loscalzo Decl. Ex. C, ECF No. 14-4 at 5.)  "The Court may therefore exercise personal jurisdiction for these ERISA claims over the defendant pursuant to 29 U.S.C. § 1132(e)(2)."  *Tuckahoe Tile, Inc.*, 2016 WL 8711716, at *3.

### 3.    Venue

An action to recover unpaid contributions under ERISA may be brought in the district where the plan is administered or where the court has jurisdiction over the parties.  29 U.S.C. §§ 1132(e)(2), 1451(d) & 185(a).  Because the Funds are administered in Whitestone, New York, venue in this district is appropriate.

### C.    Default Judgment Factors

Courts apply the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment.  *See Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH), 2025 WL 832730, at *5 (E.D.N.Y. Mar. 18, 2025) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)), *adopted by* Order Adopting R. & R., *Bocon v. 419*

*Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Mar. 31, 2025), *as amended by* Am. Order Adopting R. & R., *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502 (PKC)(MMH) (E.D.N.Y. Apr. 9, 2025). Specifically, courts examine "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

Here, all three factors weigh in Plaintiffs' favor. As to the first factor of willfulness, a defendant's failure to answer a complaint and respond to a motion for default judgment is considered willful. *Acosta v. DRF Hosp. Mgmt. LLC*, No. 18-CV-346 (DRH)(AKT), 2019 WL 1590931, at *6 (E.D.N.Y. Mar. 13, 2019), *adopted by* 2019 WL 1585225 (E.D.N.Y. Apr. 12, 2019) ("When a defendant is continually and entirely unresponsive, defendant's failure to respond is considered willful.") (cleaned up). Because Defendant was properly served, Defendant's failure to respond or otherwise appear in this action demonstrates willfulness.

*Second*, without an answer to the Complaint, "the Court cannot determine whether a defendant has a meritorious defense and granting a default judgment is favored under those circumstances." *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021) (cleaned up), *adopted by* 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021); *Bd. of Trs. of Loc. 810 Affiliated Pension Fund v. Joseph Eletto Transfer, Inc.*, No. 23-CV-1616 (DLI)(MMH), 2024 WL 628808, at *3 (E.D.N.Y. Feb. 1, 2024) (cleaned up), *adopted by* Order Adopting R. & R., *Bd. of Trs. of Loc. 810 Affiliated*

*Pension Fund v. Joseph Eletto Transfer, Inc.*, No. 23-CV-1616 (DLI)(MMH) (E.D.N.Y. Feb. 22, 2024) (cleaned up).  Accordingly, this factor weighs in favor of default judgment.

*Third*, Plaintiffs will be prejudiced if the motion for default judgment is denied because it has "no alternative legal redress."  *United States v. Myers*, 236 F. Supp. 3d 702, 709 (E.D.N.Y. 2017).  In other words, because Defendant has failed to respond or otherwise appear in this action, without the entry of default judgment, the Funds would be unable to recover the unpaid contributions.  *Trs. of the New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprent., Journeyman Retraining, Educ. & Indus. Fund v. Inniss Constr., Inc.*, No. 20-CV-6894 (LJL)(KHP), 2021 WL 2556130, at *2 (S.D.N.Y. May 13, 2021), *adopted sub. nom. by Trs. of New York City Dist. Council of Carpenters Pension Fund v. Inniss Constr., Inc.*, 2021 WL 2555840 (S.D.N.Y. June 22, 2021).  Based on the foregoing, entry of default is permissible.

### D.    Liability

#### 1.    ERISA

Section 515 of ERISA provides that an employer "obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145; *Trs. of Pavers & Road Builders Dist. Council Welfare, Pension, & Annuity Funds v. Cape Mount Heavy Constr. & Assocs., LLC*, No. 22-CV-5050 (KAM)(JRC), 2023 WL 5830338, at *4 (E.D.N.Y. July 31, 2023), *adopted by* 2023 WL 5287218 (E.D.N.Y. Aug. 17, 2023).  "To establish a violation of section 515, Plaintiffs must plausibly allege that Defendant is: (1) an employer; (2) bound by a CBA that required payment of contributions; and (3) failed to make those contributions."  *Trs. of Pavers & Rd.*

*Builders Dist. Council Welfare, Pension, & Annuity Funds v. Toros Bros. Constr. Corp.*, No. 24-CV-537 (FB)(MMH), 2025 WL 819918, at *4 (E.D.N.Y. Mar. 16, 2025) (cleaned up), *adopted by* 2025 WL 953135 (E.D.N.Y. Mar. 31, 2025).

The allegations in the Complaint establish Defendant's liability. First, the Funds allege that Defendant is an employer in an industry affecting commerce and that the Funds are employee benefit plans, both within the meaning of ERISA. (Compl., ECF No. 1 ¶¶ 4–5.) Next, Plaintiffs allege that Defendant was bound by CBAs and the Collection Policy that required Defendant to remit benefit contributions to the Funds and Union Assessments to the Funds according to the number of Covered Work hours its employees performed. (*Id.* ¶¶ 14–16.) Specifically, Defendant was bound by two PLAs that incorporated the CBAs. (Loscalzo Decl. Exs. A–D, ECF Nos. 14-1 through 14-4.) Pursuant to these obligations, Defendant was required to pay contributions on behalf of its employees to each of the Funds, in amounts specified in the CBAs, and to submit remittance reports detailing the Covered Work hours. (Loscalzo Decl. Ex. C (CBA 1), ECF No. 14-3 at 23–25 (art. IX § 1); *id.* Ex. D (CBA 2), ECF No. 14-4 at 25–26 (art. IX § 1).) Lastly, Plaintiffs allege that Defendant failed to make contributions and failed to submit remittance reports pursuant to its obligations. (Compl., ECF No. 1 ¶¶ 24, 29.)

Based on the foregoing, the Court respectfully recommends entry of default judgment against Defendant on Plaintiffs' ERISA claim.

### 2.    LMRA

Section 301(a) of the LMRA provides federal jurisdiction over "[s]uits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Under the LMRA, if an employer fails to

make contributions or submit remittance reports to employee benefit plans pursuant to a collective bargaining agreement, the employer may be held liable. *See Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14B, AFL-CIO v. Focus Constr. Grp., Inc.*, No. 23-CV-1710 (ENV)(RER), 2023 WL 7687844, at *2 (E.D.N.Y. Oct. 10, 2023) (cleaned up), *adopted by* Order Adopting R. & R., *Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14B, AFL-CIO v. Focus Constr. Grp., Inc.*, No. 23-CV-1710 (ENV)(JAM) (E.D.N.Y. June 11, 2025).

Here, the facts alleged in the Complaint also establish Defendant's liability under the LMRA. Plaintiffs allege that they are trustees of multiemployer labor management trust funds operating in accordance with the LMRA. (Compl., ECF No. 1 ¶ 4.) Plaintiffs also allege that Defendant is an "employer in an industry affecting commerce within the meaning . . . of the LMRA." (*Id.* ¶ 5.) Plaintiffs further allege that Defendant was obligated under the CBAs to remit benefit contributions, Union Assessments, and periodic reports regarding the amount of Covered Work performed yet failed to do so. (*Id.* ¶¶ 12–14, 16–17, 23–24, 33.) "Plaintiffs' uncontested allegations are sufficient to establish defendant's liability under the LMRA." *Cape Mount Heavy Constr.*, 2023 WL 5830338, at *4.

Based on the foregoing, the Court respectfully recommends entry of default judgment against Defendant on Plaintiffs' LMRA claim.

### E.    Damages

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (cleaned up). "On a motion for a default judgment, a plaintiff has the burden to prove

damages to the Court with a 'reasonable certainty.'" *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB), 2021 WL 7906551, at *8 (E.D.N.Y. Aug. 24, 2021) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantra*, 183 F.3d 151, 155 (2d Cir. 1999)), *adopted by* Order Adopting R. & R., *Ramah v. 138 Hillside Ave Inc.*, No. 20-CV-3317 (LDH)(LB) (E.D.N.Y. Sept. 16, 2021).  A court may rely on detailed affidavits and documentary evidence to determine damages.  *Allstate Ins. Co. v. Aminov*, No. 11-CV-2391 (MKB), 2014 WL 527834, at *7 (E.D.N.Y. Feb. 7, 2014) (citing *Fustok v. ContiCommodity Servs. Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

"Where an employee benefit plan plaintiff has established liability under § 515 of ERISA, the court shall award the plan (a) the unpaid contributions; (b) interest on the unpaid contributions; (c) an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent; (d) reasonable attorney's fees and costs; [and] (e) other relief the court deems appropriate." *Sullivan v. Champion Elec. Mech. Builders Corp*., No. 18-CV-5618 (ENV)(RER), 2020 WL 9814085, at *4 (E.D.N.Y. Feb. 25, 2020) (citing 29 U.S.C. § 1132(g)(2)), *adopted by* Order Adopting R. & R., *Sullivan v. Champion Elec. Mech. Builders Corp.*, No. 18-CV-5618 (ENV)(RER) (E.D.N.Y. Mar. 21, 2020).

Further, "although a successful plaintiff suing on behalf of a labor organization for violation of labor contracts pursuant to Section 301 of the LMRA is also entitled to an award of compensatory money damages, a plaintiff bringing a claim under Section 301 of the LMRA may recover only those damages provided for in the collective bargaining agreement and trust agreements." *Annuity, Pension, Welfare, Training & Lab. Mgmt. Cooperation Tr. Funds of Int'l Union of Operating Eng'rs, Loc. 14-14B, AFL-CIO by Christian v. Coastal Env't Grp.*

13

*Inc.*, No. 18-CV-5773 (AMD)(ST), 2019 WL 4603805, at *10 (E.D.N.Y. Sept. 5, 2019) (cleaned up), *adopted sub nom. by Annuity, Pension, Welfare, Training & Lab. Mgmt. Cooperation Tr. Funds of Int'l Union of Operating Eng'rs, Loc. 14-14B, AFL-CIO by Christian v. Coastal Env't Grp. Inc.*, No. 18-CV-5773 (AMD)(ST), 2019 WL 4602851 (E.D.N.Y. Sept. 23, 2019).

Here, Plaintiffs seek the following damages: (1) estimated delinquent contributions and union assessments, (2) 10% interest on all delinquent contributions, (3) liquidated damages, (4) post-judgment interest, and (5) attorneys' fees and costs. (Pls. Mem., ECF No. 18 at 13–19.) To support these requests, Plaintiffs rely on the declarations of Keith Loscalzo, an officer of the Union (Loscalzo Decl., ECF No. 14); Joseph Montelle, the Funds' administrator (Montelle Decl., ECF No. 15); Jennifer Ebitz, Regional Director from a third-party administrator, Zenith American Solutions, Inc. (Ebitz Decl., ECF No. 16); Adrianna R. Grancio, Plaintiffs' counsel (Grancio Decl., ECF No. 17); and a supplemental letter (Pls. Suppl. Ltr., ECF No. 27), all with supporting exhibits.

### 1.    Delinquent Contributions & Union Assessments

The Funds seek $36,198.95 in estimated delinquent contributions and $1,484.13 in estimated union assessments for the period November 2023 through July 2024, when

Defendant did not submit monthly remittance reports.  (Montelle Decl., ECF No. 15 ¶ 30; Pls. Mem., ECF No. 18 at 15; Grancio Decl., ECF No. 17 ¶ 24; Pls. Supp. Ltr., ECF No. 27 at 5.)[4]

> Per the Collection Policy's Estimation Protocol, Plaintiffs calculate the delinquency as:
>
> the greater of (a) the average monthly payments based on reports actually submitted by the employer for the last three (3) months for which payments and reports were submitted or (b) the average of the monthly payments based on reports actually submitted by the Employer for the last twelve (12) months for which payments and reports were actually submitted. . . . The projection may be used as a determination of payments due for each delinquent month, and may be used for purposes of any lawsuit.

(Montelle Decl. Ex. I, ECF No. 15-4 at 9–10.)  Applying this protocol, Plaintiffs estimated the delinquency for this period by using the remittance reports for which payments were submitted to estimate the amount owed for Covered Work for the period between November 2023 and July 2024.  (Montelle Decl., ECF No. 15 ¶ 14; *id.* Ex. J, ECF No. 15-5 (remittance reports); *id.* Ex. K, ECF No. 15-6 (Estimation Spreadsheet).)  According to Plaintiffs, the periods July 2021 through November 2021 and February 2022 through August 2022 (rather than the calendar period November 2022 to October 2023) are the last 12 months when Defendant paid contributions and submitted reports because those contributions were funded through a settlement agreement that had been paid in full.  (Montelle Decl., ECF No. 15 n.1.)[5]  The Court finds that the use of the remittance reports for these two periods acceptable.  *See Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Trac Constr. Grp., Inc.*,

---

[4] Plaintiffs confirmed that the requested union assessments of $5,883.31 stated in their memorandum of law (*see* Pls. Mem., ECF No. 18 at 16) was a typographical error.  (*See* Pls. Supp. Ltr., ECF No. 27 at 5.)

[5] At the motion hearing, counsel appeared to suggest that Plaintiffs either did not have union work for that period or there were no reports submitted.  (Hr'g Tr., ECF No. 26 at 6:23–7:4.)  The Court will rely on Montelle's sworn testimony.

No. 23-CV-7545 (KAM)(SJB), 2024 WL 4314959, at *8 (E.D.N.Y. Aug. 14, 2024), *adopted as modified by* 2024 WL 4100176 (E.D.N.Y. Sept. 6, 2024) (allowing the Funds to use the reports from April to December 2019, February to March 2020, and June 2020 to estimate the delinquent contributions for the periods of July 2020 and March through June 2021).

*First*, using these reports, Plaintiffs determined the total amount of contributions and union assessments paid for each month during the most recent twelve months and then determined the higher of the twelve-month average versus the three-month average. (Montelle Decl., ECF No. 15 ¶¶ 14, 17; *id*. Ex. K, ECF No. 15-6 (Estimation Spreadsheet).)[6] For the twelve-month period from July 2021 to November 2021 and from February 2022 to August 2022, Plaintiffs calculated that the twelve-month contribution average is $4,187.10. (Montelle Decl., ECF No. 15 ¶ 17 & n.3; *id*. Ex. K, ECF No. 15-6 at 1–2 (Estimation Spreadsheet).) For the three-month period between June 2022 and August 2022, Plaintiffs calculated that the three-month contribution average is $3,666.88.[7] (Montelle Decl., ECF

---

[6] Plaintiffs determine the total amount of contributions and assessments paid for each month by adding the amounts owed to the Pavers Welfare Fund, Income Replacement Benefit ("IRB"), Pavers Pension Fund, Pavers Annuity Fund, Local 1010 Training Fund, Local 1010 LECT, NYS LECET, and NYS Laborers Health and Safety Fund. (Montelle Decl., ECF No. 15 ¶ 15.) On Plaintiffs' spreadsheet, IRB is listed as "Pavers Vacation Fund." (*Id*. Ex. K, ECF No. 15-6 at 1–2.) Although Montelle avers that Plaintiffs determine the total amounts of contributions and assessments paid for each month by adding the amounts owed to "Heavy Construction Industry Fund," among others (Montelle Decl., ECF No. 15 ¶ 15), the Court believes this is a typographical error. Plaintiffs are not seeking amounts owed to the Heavy Construction Industry Fund (*id*. ¶ 20 n.4) and Plaintiffs' calculation does not include the amounts owed to this fund. (*Id*. Exs. J–K, ECF Nos. 15-5 & 15-6.)

[7] Montelle correctly states the amount of contributions and assessments for the months of June through August 2022 ($6,985.44 + $1,204.56 + $2,810.64), but the total amount ($11,000.84) is incorrect. (*See* Montelle Decl., ECF No. 15 ¶ 17 n.2.) The total amount should be $11,000.64, but the three-month average $3,666.88 is correct.

No. 15 ¶ 17 & n.2; *id*. Ex. K, ECF No. 15-6 at 1–2  (Estimation Spreadsheet).)  The higher of the two is the twelve-month average.

*Second*, Plaintiffs estimated the number of hours worked for the delinquent period by dividing the twelve-month contribution average by the total benefit rate applicable to the period.  (Montelle Decl., ECF No. 15 ¶ 18; *id*. Ex. K, ECF No. 15-6 (Estimation Spreadsheet).)  Because Defendant's delinquency spans two different benefit periods (July 1, 2023 through June 30, 2024 and July 1, 2024 through June 30, 2025), this calculation was performed for each period.  (Montelle Decl., ECF No. 15 ¶ 19; *id*. Ex. K, ECF No. 15-6 (Estimation Spreadsheet); *id*. Ex. L, ECF No. 15-7 (rates).)  For example, for the delinquent period of November 2023 through June 2024, the total benefit rate was $51.87.[8]  (Montelle Decl. Ex. L, ECF No. 15-7 at 1.)  The twelve-month contribution average ($4,187.10) divided by the benefit rate ($51.87) yields an average of 80.72 hours per month for November 2023 to June 2024.  (Montelle Decl., ECF No. 15 ¶ 20; *id*. Ex. K, ECF No. 15-6 at 1 (Estimation Spreadsheet).)  Similarly, for the delinquent period of July 2024 through June 2025, Plaintiffs divided the twelve-month contribution average ($4,187.10) by the total benefit rate ($53.55) to yield an average of 78.19 hours per month for that period.  (Montelle Decl., ECF No. 15 ¶ 21; *id.* Ex. K, ECF No. 15-6 at 2 (Estimation Spreadsheet).)

*Third*, Plaintiffs multiplied the average number of hours for the delinquent period by the benefit rate for each respective fund to determine the average contribution due to each fund per month for the delinquency period.  (Montelle Decl., ECF No. 15 ¶ 22.)  Finally, Plaintiffs

---

[8] As noted, Plaintiffs do not seek the amounts owed to the Heavy Construction Industry Fund; thus, they deduct the $0.30 owed to the Heavy Construction Industry Fund from the total benefit rate of $52.17 to obtain the adjusted total rate $51.87.  (*See* Montelle Decl., ECF No. 15 ¶ 20 n.4.)

added the totals for each fund to determine the estimated monthly contributions due and multiplied that by the number of months the employer failed to submit reports. (*Id.* ¶¶ 23, 25.)

Using this methodology, Plaintiffs estimated the following unpaid contributions and union assessments:

| Dates | Unpaid Contributions | Unpaid Union Assessments |
|---|---|---|
| November 2023 – June 2024 | $32,172.16 | $1,323.84 |
| July 2024 | $4,026.79 | $160.29 |
| **TOTALS** | **$36,198.95** | **$1,484.13** |

(Montelle Decl., ECF No. 15 ¶¶ 27, 29.)  The Court has reviewed Plaintiffs' calculations and finds them to be accurate.  (Montelle Decl. Ex. K, ECF No. 15-6 (Estimation Spreadsheet).) Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$36,198.95** in unpaid contributions and **$1,484.13** in unpaid union assessments for the period of November 2023 to July 2024.

### 2.     Interest

The Funds also seek interest on the delinquent contributions in the amount of $2,268.20 (through December 20, 2024) for the period November 2023 through July 2024.  (Montelle Decl., ECF No 15 ¶ 32; Pls. Mem., ECF No. 18 at 15.)

"ERISA entitles Plaintiff[s] to interest on all ERISA [c]ontributions that were unpaid at the time the complaint was filed, as well as those that accrued while the lawsuit was pending." *Trac Constr. Grp., Inc.*, 2024 WL 4314959, at *8 (quoting *Finkel v. Detore Elec. Constr. Co.*, No. 11-CV-814, 2012 WL 1077796 (ENV)(RER), at *8 (E.D.N.Y. Mar. 6, 2012) (citing 29 U.S.C. § 1132(g)(2)(B)), *adopted by* 2012 WL 1078470, at *1 (E.D.N.Y. Mar. 30, 2012)).  "Plaintiffs are entitled to interest on delinquent contributions at the rate provided by the applicable employee benefit plan." *Trs. of Pavers & Rd. Builders Dist. Council Welfare,*

*Pension, Annuity & Apprent., & Skill Improvement & Safety Funds v. Kel-Tech Constr. Inc.*, No. 19-CV-2487 (ENV)(SJB), 2020 WL 6051097, at *7 (E.D.N.Y. Aug. 25, 2020) (citing 29 U.S.C. § 1132(g)(2)(B)), *adopted by* Order Adopting R. & R., *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprent., & Skill Improvement & Safety Funds v. Kel-Tech Constr. Inc.*, No. 19-CV-2487 (ENV)(SJB) (Oct. 13, 2020).  The Collection Policy provides that if the employer fails to pay the required contributions, the Funds may collect interest at a rate of 10% per year (calculated from the due date, the 35th day after the close of the month in which the hours were worked).  (Montelle Decl. Ex. I, ECF No. 15-4 (Collection Policy, art. II ¶ 5).)

Plaintiffs used the following formula to calculate interest for estimated delinquent contributions and assessments: (1) determine the number of days between the due date and current date (*i.e.*, the number of days which the contributions are late); (2) calculate the daily rate interest by multiplying the contributions due per month by 10% as provided in the CBA and Collection Policy; (3) divide the full year of interest by 365 days; and (4) multiply the daily interest rate by the number of days the contributions are late. (Montelle Decl., ECF No. 15 ¶ 33; *id*. Ex. K, ECF No. 15-6 at 3 (Interest Calculation).)

For example, for November 30, 2023, Defendant owed $4,021.52 in contributions that were due on January 4, 2024 (35 days after the close of the month) as per the CBA and Collection Policy.  (Loscalzo Decl. Ex. C, ECF No. 14-3 at 23–24 (CBA 1 art. IX § 1); Montelle Decl., ECF No. 15 ¶ 33; *id.* Ex. K, ECF No. 15-6 at 3 (Interest Calculation).)  As of December 20, 2024, the contributions for November 30, 2023 were 351 days late.  (Montelle Decl., ECF No. 15 ¶ 33.)  The total yearly interest due for the November 2023 contributions was calculated as $402.15 ($4,021.52 x 10%), then divided by 365 days to yield a daily interest

rate of $1.10.  (*Id.*; *id.* Ex. K, ECF No. 15-6 at 3 (Interest Calculation).)  The daily interest rate was then multiplied by 351 days to yield $386.10 total interest for the November 2023 contributions.  Plaintiffs repeated this calculation for December 2023 through July 2024.  (*Id.* ¶ 34; Montelle Decl. Ex. K, ECF No. 15-6 at 3 (Interest Calculation).)  The Court has reviewed Plaintiffs' interest calculations and finds them to be correct.  (Montelle Decl. Ex. K, ECF No. 15-6 at 3 (Interest Calculation).)

Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$2,268.20** in interest calculated through December 20, 2024, and additional interest accruing at the daily rate of **$1.10** from December 21, 2024 through the date judgment is entered.

### 3.    Liquidated Damages

The Funds further seek liquidated damages in the amount of $3,619.89.  (Montelle Decl. No. 15 ¶ 35; Pls. Mem., ECF No. 18 at 15.)  "ERISA permits the Court to award liquidated damages equal to the greater of either: (1) the interest on the unpaid contributions; or (2) the amount designated by the CBA (up to 20 percent of the delinquent contributions)." *UFCW Loc. 50 Pension Fund v. G & W Food Prods., Inc.*, No. 20-CV-4751 (AMD)(LB), 2021 WL 3934139, at *6 (E.D.N.Y. Aug. 17, 2021) (citing 29 U.S.C. § 1132(g)(2)(C)), *adopted sub nom. by UFCW Loc. 50 Penson Plan v. G&W Food Prods., Inc.*, No. 20-CV-4751 (AMD)(LB), 2021 WL 3931351 (E.D.N.Y. Sept. 2, 2021); *Ret. Fund of Loc. 1482 Paint & Allied Prods. Mfrs. v. N. Adhesives, Inc.*, No. 22-CV-5850 (HG)(RML), 2023 WL 7688689, at *5 (E.D.N.Y. June 20, 2023), *adopted by* Order Adopting R. & R., *Ret. Fund of Loc. 1482 Paint & Allied Prods. Mfrs. v. N. Adhesives, Inc.*, No. 22-CV-5850 (HG)(RML) (E.D.N.Y. July 11, 2023).  Pursuant to the CBAs, "[i]f an Employer fails to pay contributions as provided for [in the CBA] when due, the Employer shall pay . . . [l]iquidated damages in the amount of

ten (10%) percent." (Loscalzo Decl. Ex. C (CBA 1), ECF No. 14-3 at 26 § 5(c); *id.* Ex. D (CBA 2), ECF No. 14-4 at 27 § 5(c).) Here, Plaintiffs accurately calculated the liquidated damages for the period from November 2023 through July 2024 by multiplying the unpaid contributions by 10% for a total of $3,619.89 (*i.e.*, $36,198.95 x 10%). (Montelle Decl., ECF No. 15 ¶ 35; Pls. Mem., ECF No. 18 at 9.)

Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$3,619.89** in liquidated damages.

### 4.    Post-Judgment Interest

The Funds also request post-judgment interest. "[T]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Tru-Art Sign Co. v. Loc. 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citing 28 U.S.C. § 1961). Accordingly, the Court respectfully recommends that Plaintiffs should be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

### 5.    Attorneys' Fees

Plaintiffs seek attorneys' fees in the amount of $4,331.10 for services performed by the law firm of Virginia & Ambinder, LLP ("V&A"). (Pls. Mem., ECF No. 18 at 17; Pls. Suppl. Ltr., ECF No. 27 at 5; *id.* Ex. 1, ECF No. 27-1 (Billing Records Backup).)

Section 502(g)(2) of ERISA allows for an award of reasonable attorneys' fees and costs. *Toros Bros. Constr. Corp.*, 2025 WL 819918, at *9 (citing 29 U.S.C. § 1132(g)(2)(D)). Furthermore, the CBA provides that "[i]f an Employer fails to pay contributions as provided for in Article IX, Article XV and/or Article XIV when due, the Employer shall pay, in addition to the amounts due and unpaid . . . [c]osts and attorneys' fees[.]" (*See* Loscalzo Decl. Ex. C

21

(CBA 1), ECF No. 14-3 at 26 § 5(b); *see also* Montelle Decl. Ex. I (Collection Policy), ECF No. 15-4 at 3.)  District courts have broad discretion to determine the amount of attorneys' fees.  *Annuity, Welfare & Apprent. Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Concrete Indus. One Corp.*, No. 22-CV-6080 (ENV)(TAM), 2023 WL 7390362, at *9 (E.D.N.Y. Aug. 9, 2023), *adopted sub nom. by Annuity, Welfare & Apprent. Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Concrete Indus. One Corp.*, No. 22-CV-6080 (ENV)(TAM), 2023 WL 6969943 (E.D.N.Y. Oct. 23, 2023).

"In the Second Circuit, attorney's fees are awarded by determining a 'presumptively reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably expended hours.'"  *N. Adhesives, Inc*., 2023 WL 7688689, at *6 (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 186 (2d Cir. 2008)).  "The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and necessity of the hours spent and the rates charged." *Cape Mount Heavy Constr.*, 2023 WL 5830338, at *10 (quoting *Fermin v. La Delicias Peruanas Rest., Inc*., 93 F. Supp. 3d 19, 51 (E.D.N.Y. 2015)).  Thus, a request for attorney's fees must include contemporaneous time records that specify for each attorney the date, the hours expended, and the nature of the work done.  *Annuity, Pension, Welfare, Training & Lab. Mgmt. Cooperation Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14b, AFL-CIO by Christian v. Regal USA Concrete, Inc.*, No. 23-CV-1208 (FB)(RML), 2023 WL 7413837, at *3 (E.D.N.Y. Sept. 28, 2023) (citing *New York State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)), *adopted by* 2023 WL 6865599 (E.D.N.Y. Oct. 18, 2023).

"In reviewing a fee application, the Court should exclude 'excessive, redundant, or otherwise unnecessary' hours." *Cape Mount Heavy Constr.*, 2023 WL 5830338, at *11 (quoting *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009)).

### a.    Hourly Rates

Plaintiffs request the following hourly rates as reflected in contemporaneous billing records: (1) $333.00 for attorney Adrianna Grancio; (2) $333.00 for attorney Marlena Smith; (3) $333.00 for an unidentified individual with initials "AH"; and (4) $132.00 for legal assistants Eva Keating and Abigail Frankel.[9]  (Grancio Decl., ECF No. 17 ¶¶ 16–17; Pls. Suppl. Ltr., ECF No. 27 at 6; *id.* Ex. 1 (Billing Records Backup).)

To determine a reasonable hourly rate, the court looks to the prevailing hourly rates that attorneys charge for comparable work. *Regal USA Concrete, Inc.*, 2023 WL 7413837, at *4.  "In ERISA cases, attorney's fees have been awarded in the Eastern District of New York at an hourly rate of $300.00 to $450.00 for partners, $200.00 to $325.00 for senior associates, $100.00 to $200.00 for junior associates, and up to $90.00 for non-attorney support staff." *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. IKNA Constr. LLC*, No. 24-CV-561, 2025 WL 447731, at *17 (E.D.N.Y. Jan. 15, 2025), *adopted sub nom. by Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. INKA Constr. LLC*, No. 24-CV-561 (CBA) (JAM), 2025 WL 777108 (E.D.N.Y. Mar. 11, 2025)

---

[9] In supplemental briefing, Plaintiffs confirmed that they seek an hourly rate of $132.00 for legal assistants (Pls. Suppl. Ltr., ECF No. 27 at 6), consistent with the memorandum of law and contrary to Attorney Grancio's declaration in support of the default judgment motion.  (*Compare* Grancio Decl., ECF No. 17 ¶¶ 18–19 (seeking $120.00 hourly rate) *with* Mem., ECF No. 18 at 17 (seeking $132.00 hourly rate).)

(cleaned up); *but see Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 242–43 (E.D.N.Y. 2025) (noting that attorneys' fees may be adjusted for inflation).

The Court finds that some, but not all, of Plaintiffs' requested hourly rates are reasonable. *First*, Attorney Grancio's proposed hourly rate of $333.00 is reasonable: she is a 2016 law school graduate, a partner at V&A, and has practiced ERISA collections litigation for the past six years. (Grancio Decl., ECF No. 17 ¶ 14.). Other courts have awarded her comparable rates. *See, e.g.*, *Toros Bros. Constr. Corp.*, 2025 WL 819918, at *9. *Second*, the Court finds that Attorney Smith's proposed hourly rate of $333.00 is not reasonable. Plaintiffs seek the same rate for attorneys Smith and Grancio, yet attorney Smith has less experience than attorney Grancio: she graduated law school in 2018, was Senior Counsel at the New York City Law Department, and has been an associate at V&A practicing ERISA collection actions for an unspecified period of time. (Grancio Decl., ECF No. 17 ¶ 15.) While the Court declines to award Plaintiffs' requested rate for attorney Smith, an award of $300.00 is warranted based on her background and experience. *IKNA Constr. LLC*, 2025 WL 447731, at *17 (awarding attorney Smith $300.00 per hour in ERISA default judgment action and collecting cases awarding similar fees for similarly experienced associates). *Third*, the Court declines to award $333.00 for "AH," even though AH may be an attorney based on the proposed hourly rate, because Plaintiffs do not include any information about AH's professional background, experiences, or skills to justify this rate. *Alzal Corp. v. Killer Carz LLC*, No. 15-CV-4968 (RPK)(MMH), 2024 WL 3871074, at *12 (E.D.N.Y. Aug. 19, 2024), *adopted by* Order Adopting R. & R., *Alzal Corp. v. Killer Carz LLC*, No. 15-CV-4968 (RPK)(MMH) (E.D.N.Y. Sept. 23, 2024) (declining to award attorneys' fees for unidentified person in contemporaneous billing records). Instead, based on AH's work described in the billing records, the Court

awards \$75.00, within the range for legal assistants with minimal experience. Finally, the Court awards Plaintiffs the requested rates for legal assistants Keating and Frankel consistent with the range of awards for legal support staff in ERISA actions.

### b.    Reasonable Hours Expended

Plaintiffs' requests attorneys' fees for 15.3 hours of work, including: (1) 8.2 hours for attorney Grancio; (2) 1.8 hours for attorney Smith; (3) 1.5 hours for "AH"; and (4) 3.8 hours for legal assistants Keating and Frankel. (Pls. Suppl. Ltr., ECF No. 27 at 6; *id*. Ex. 1, ECF No. 27-1 (Billing Records Backup).)[10] After a careful review of the records, the Court finds the billed activities to be reasonable and not excessive, redundant, or unnecessary, and V&A's time is within the range of reasonable hours expended in ERISA cases involving a default judgment. *See, e.g., IKNA Constr. LLC*, 2025 WL 447731, at *17 (recommending attorneys' fee award based on 25.4 hours of work and collecting cases showing fee awards in ERISA default actions for 17 to 49 hours of work); *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Loc. 1010 Apprent., Skill Improvement & Training Funds v. PCM Contracting Corp.*, No. 20-CV-1834 (FB)(SJB), 2022 WL 584536, at *10 (E.D.N.Y. Feb. 3, 2022), *adopted by* 2022 WL 580959 (E.D.N.Y. Feb. 24, 2022) (awarding 39.4 hours of work in an ERISA default judgment); *see also Cape Mount Heavy Constr.*, 2023 WL 5830338, at

---

[10] Plaintiffs no longer seek the 0.1 hours billed by "MM," stated in the billing records. (Pls. Suppl. Ltr., ECF No. 27 at 6; *id*. Ex. 1, ECF No. 27-1 at 4.)

*12 (recommending awarding 48.8 hours for attorneys' fee in ERISA action where plaintiffs' counsel had to review extensive records and prepare a number of detailed declarations).

Based on the adjusted hourly rates and hours, the attorneys' fees are summarized below:

| Name | Hourly Rate | Hours | Fees |
|---|---|---|---|
| Adrianna Grancio | $333.00 | 8.2 | $2,730.60 |
| Marlena Smith | $300.00 | 1.8 | $540.00 |
| Eva Keating | $132.00 | 0.7 | $92.40 |
| Abigail Frankel | $132.00 | 3.1 | $409.20 |
| "AH" | $75.00 | 1.5 | $112.50 |
| | **TOTALS** | **15.3** | **$3,884.70** |

Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$3,884.70** in attorneys' fees.

### 6.    Costs

Plaintiffs seeks $502.88 in costs, including filing fees, costs of service, research fees. and postage.  (Pls. Mem., ECF No. 18 at 18–19; Grancio Decl., ECF No. 17 ¶ 23; Pls. Suppl. Ltr., Ex. 1, ECF No. 27-1 at 6–21 (Receipts).)  "When a prevailing party seeks to recover those costs associated with the prosecution of an action, the court is permitted to award reasonable expenses incurred by the attorneys and charged to clients."  *Joseph Eletto Transfer, Inc.*, 2024 WL 628808, at *8 (cleaned up).  Here, Plaintiffs are entitled to the $405 filing fee for this case as reflected on the docket (ECF No. 1 Dkt. Entry) because the Court permissibly takes judicial notice of docket notations for paid filing fees.  *Phillips v. TraxNYC Corp.*, No. 21-CV-528 (LDH)(MMH), 2023 WL 1987206, at *11 (E.D.N.Y. Feb. 14, 2023), *adopted by* 2023 WL

2532006 (E.D.N.Y. Mar. 14, 2023).  Plaintiffs also submit receipts to support the remaining costs, which are reasonable and consistent with ERISA collection litigation.  (Pls. Suppl. Ltr. Ex. 1, ECF No. 27-1 at 6–21 (Receipts).)

Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$502.88** in costs.

## III.    <u>CONCLUSION</u>

For all the foregoing reasons, the Court respectfully recommends that Plaintiffs' motion for default judgment at ECF No. 13 should be **granted in part** as follows: (1) a default judgment should be entered against Defendant[11] and (2) Plaintiffs should be awarded damages in the amount of **$47,958.75**, which includes: (a) **$36,198.95** in delinquent contributions and **$1,484.13** in delinquent union assessments for the period between November 2023 through July 2024; (b) **$2,268.20** in interest on the delinquent contributions and union assessments through December 20, 2024; (c) interest on the delinquent contributions and union assessments at the rate of **$1.10** per day from December 21, 2024 until the day of judgment; (d) **$3,619.89** in liquidated damages on the unpaid ERISA contributions; (e) **$3,884.70** in attorneys' fees; (f) **$502.88** in costs; and (g) post-judgment interest at the statutory rate set forth in 28 U.S.C. § 1961.  All other requests should be **denied**.

A copy of this Report and Recommendation is being served on Plaintiffs via ECF.  The Clerk of Court is respectfully directed to serve a copy of this Report and Recommendation to Defendant Rici Corp. at the following addresses forthwith: (1) Rici Corp., 46 Hobart Place,

---

[11] The Plaintiffs' proposed default judgment (ECF No. 17-9) should be amended consistent with this Report and Recommendation, if adopted, or the Court's Order, if modified.

Garfield, New Jersey 07026; and (2) Rici Corp., 41 Liberty Avenue, Passaic, New Jersey 07005.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to Judge Kovner. If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
September 19, 2025

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge

28